UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ELECTRONIC EDISON TRANSMISSION TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>**GOOGLE LLC,**<br><br>Defendants. | CASE NO. 2:24-cv-00335-JRG<br><br>JURY TRIAL DEMANDED |

**<u>OPPOSITION TO GOOGLE'S RULE 12(B)6 MOTION TO DISMISS</u>**
**<u>THE FIRST AMENDED COMPLAINT (Dkt 29)</u>**

Plaintiff Electronic Edison Transmission Technologies, LLC ("Plaintiff" or "EETT") respectfully submits this Brief in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss the First Amended Complaint [Dkt. No. 29] ("Google's Motion" or "Motion").

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................................1

II. LEGAL STANDARD....................................................................................................................1

III. THE FIRST AMENDED COMPLAINT SUFFICIENTLY AND PLAUSIBLY ALLEGES
      DIRECT INFRINGEMENT ......................................................................................................2

IV. THE FIRST AMENDED COMPLAINT SUFFICIENTLY AND PLAUSIBLY ALLEGES
      INDIRECT INFRINGEMENT..................................................................................................6

V. CONCLUSION...............................................................................................................................8

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................................. 2

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ................................. 1

*Dueling v. Devon Energy Corp.*, 623 Fed. Appx. 127, 129 (5th Cir. 2015) ................................... 2

*Estech Systems, Inc. v. Regus Mgmt. Group, LLC,* 2020 WL 6496426 at *2-3 (E.D. Tex.
    Aug. 10, 2020) ........................................................................................................................... 1

*Jones v. Robinson Prop Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) ......................................... 2

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.
    1982) .......................................................................................................................................... 1

*Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) ........................... 2

*Parity Networks LLC v. Cisco Systems, Inc.,* 2019 WL 3940952 at *2 (W.D. Tex. July 26,
    2019) .......................................................................................................................................... 2

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) ............. 1, 6, 7, 8

*SiRF Technologies, Inc. v. International Trade Com'n* (601 F.3d 1319 (Fed. Cir. 2010)) ..................... 4, 5

*Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ................................................................................. 1

*Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1381 (Fed. Cir. 2017) .............................................. 5

*Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 593 (E.D. Tex.
    2019) .......................................................................................................................................... 2

**Rules**

Fed. R Civ. P. 8(a)(2) ..................................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1

Fed. R. Civ. P. 15(a)(2) .................................................................................................................. 2

## I.   INTRODUCTION

The Motion raises a collection of fabricated complaints over the adequacy of Plaintiff's allegations in its amended pleading when, in fact, Defendant has been provided with sufficient notice of Plaintiff's theories of infringement and facts (pre-discovery) supporting same. *See, e.g., Estech Systems, Inc. v. Regus Mgmt. Group, LLC,* 2020 WL 6496426 at *2-3 (E.D. Tex. Aug. 10, 2020) ("the standard envisioned by the Federal Rules is not a high one"). As will be discussed in more detail below, Plaintiff's First Amended Complaint ("FAC," Dkt. No. 26) provides sufficient notice and satisfies *Iqbal's* "plausibility" standard.

## II.   LEGAL STANDARD

In the Fifth Circuit, the "motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). "Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint if the complaint 'fail[s] to state a claim upon which relief can be granted.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting FED. R. CIV. P. 12(b)(6)). "The question resolved on a motion to dismiss for a failure to state a claim is not whether the plaintiff will ultimately prevail, 'but whether [the] complaint was sufficient to cross the federal court's threshold.'" *Id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). The "plaintiff is generally required to provide 'only a plausible "short and plain" statement of the plaintiff's claim . . . '" *Id.* at 936 (quoting *Skinner*, 562 U.S. at 530; Fed. R Civ. P. 8(a)(2)) (alteration in original). The plausibility standard is met when the complaint pleads "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Id*. Thus, particularly when the relevant information is beyond the plaintiff's access, the courts should generally permit discovery to proceed unless the

complaint recites no more than sheer speculation about the plaintiff's entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

When deciding motions to dismiss, Federal Rule 15(a) instructs the Court to "freely give leave [to amend] when justice so requires," within the discretion of the Court. FED. R. CIV. P. 15(a)(2); *Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 593 (E.D. Tex. 2019). This Court has interpreted Federal Rule 15(a) to "envince[] a bias in favor of granting leave to amend." *Wapp Tech Ltd. P'ship*, 406 F. Supp. 3d at 593 (quoting *Jones v. Robinson Prop Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)). Indeed, "district courts must entertain a presumption in favor of granting parties leave to amend." *Dueling v. Devon Energy Corp.*, 623 Fed. Appx. 127, 129 (5th Cir. 2015) (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (internal citation omitted) (holding the district court abused its discretion in denying plaintiffs' request for leave to amend).

### III. THE FIRST AMENDED COMPLAINT SUFFICIENTLY AND PLAUSIBLY ALLEGES DIRECT INFRINGEMENT

Defendant contends that the FAC fails the *Iqbal/Twombly* threshold pleading standard. Google is incorrect, as the FAC specifically alleges facts corresponding to each claim limitation and cites to specific documents detailing Google's infringing actions. For example, the FAC specifically alleges how Google, on information and belief, performs each of the method steps. *See, e.g.,* FAC, ¶¶ 33-39 and Exhibit B. Such a recitation of fact is sufficient to provide notice and plausibility, as this Court has found on previous occasions. *See, e.g., Parity Networks LLC v. Cisco Systems, Inc.,* 2019 WL 3940952 at *2 (W.D. Tex. July 26, 2019).

#### A. The FAC Plausibly Alleges Direct Infringement based on Manufactured Products

Google asserts that the allegations in Paragraphs 33-39 of the FAC "are all premised on [the]

BRIEF IN OPPOSITION TO MOTION TO DISMISS                                                                                           2

assertion that method claims are infringed by manufacture and sale." Motion at p. 6. However, what Google fails to mention or acknowledge is that some of the method steps in claims 1-8 *are actually manufacturing steps*. Method claims that include manufacturing steps are necessarily infringed by a party performing those manufacturing steps, in this case Google. The steps in method claims 1-8 that are not manufacturing steps are infringed by hardware that is designed, manufactured and controlled by Google.

Specifically, with regards to claim 1, the FAC states as follows:

> For example, the step of "configuring a donor wireless power transfer mechanism on the donor mobile device using a wireless transmit application" in Claim 1 ("Element 1.1") is performed by Google by configuring the Google Pixel 8 smartphone to include "Battery Share" functionality (via a "wireless transmit application") that is configured to be activated via the Google Pixel 8 settings user interface.
>
> FAC at ¶ 33 (*citing* Exhibit B, pp. 3-5) (emphasis added).
>
> The step of "configuring a receptor wireless power transfer mechanism on the receptor mobile device using a wireless receive application" in Claim 1 ("Element 1.2") is performed by Google by configuring the Pixel Buds with a wireless receive application in its firmware such the Pixel Buds can be charged by the Pixel 8 smartphone when the Pixel Buds are placed on the back of the Pixel 8 smartphone.
>
> *Id.* at ¶ 34 (*citing* Exhibit B, pp. 6-7) (emphasis Added).
>
> The step of "transferring power from donor mobile device to the receptor mobile device using the donor wireless power transfer mechanism and the receptor wireless power" in Claim 1 ("Element 1.3") is performed by Google when power is transferred from the Pixel 8 smartphone to the Pixel Buds through Qi wireless power transfer using magnetic induction.
>
> *Id.* at ¶ 35 (*citing* Exhibit B, pp. 7-8).
>
> The step of "receiving and converting received power into electric current using the receptor wireless power transfer mechanism" in Claim 1 ("Element 1.4") is performed by Google when their Pixel 8 smartphone transfers power to the Pixel Buds using magnetic induction.
>
> *Id.* at ¶ 36 (*citing* Exhibit B, pp. 8-10).

> The limitation "wherein the donor wireless power transfer mechanism includes a primary coil and donor circuit elements and the receptor wireless power transfer mechanism includes a secondary coil, receptor circuit elements and a capacitor such that the donor circuit elements provide electric current to the primary coil producing a magnetic field that generates an electric current in the secondary coil and the receptor circuit elements thereby transferring power from donor mobile device to the receptor mobile device, the capacitor storing electric charge that increases battery life when the capacitor is discharged" in Claim 1 ("Element 1.5") <u>by manufacturing the Pixel 8 smartphone and the Pixel Buds with the claimed hardware</u>. For example, when charging begins, the power transmitter in the Pixel 8 smartphone runs an alternating electrical current through its coil ("primary coil"), which generates an alternating magnetic field. This magnetic field is, in turn, picked up by the coil ("secondary coil") inside the power receiver in the Pixel Buds and transformed by a power converter back into a direct electrical current that can be used to charge the battery in the Pixel Buds. Further, the power receiver circuitry in Pixel Buds comprises a secondary coil and a capacitor such that the battery gets charged. Further, the power receiver in the Pixel Buds sends a signal to the power transmitter in the Pixel 8 phone when wireless power is not required. It would be apparent to a person having ordinary skill in the art that the capacitor in the Pixel Buds circuitry is used for storing an electric charge which further increases the battery life.
>
> *Id.* at ¶ 37 (*citing* Exhibit B, pp. 11-14) (emphasis added).

Even though Elements 1.3 and 1.4 of claim 1 do not involve manufacturing steps, they are performed by hardware that is designed and programmed by Google to automatically perform those steps. In *SiRF Technologies, Inc. v. International Trade Com'n* (601 F.3d 1319 (Fed. Cir. 2010)), the method claims at issue required some, *but not all*, of the steps of a method claim to be executed by a satellite that was under the control of the accused infringer, while the remaining steps were then automatically performed by an accused GPS receiver *that was in possession of an end user*. The Federal Circuit held that this was enough to impart direct infringement liability on the accused infringer. With regards to the steps that were performed by the GPS receiver that was in the possession of an end user, the Court stated:

> When properly construed, it is clear that SiRF infringes *as its devices and software dictate the performance of the ''processing'' and*

BRIEF IN OPPOSITION TO MOTION TO DISMISS 4

*"representing" steps*. Once the technology is enabled, SiRF's SiRFstarIII chip and software, *designed and built by SiRF*, automatically perform the disputed steps of the claims at issue because the SiRFstarIII chips are programmed by SiRF to use the InstantFix ephemeris data automatically if it has been transmitted to the remote device. Neither SiRF's customers (the equipment manufacturers and software developers) *nor the end users of the GPS receivers can modify the use of the EE files by SiRF's software or the functionality of the SiRFstarIII chip*. Once the GPS receiver is enabled and ready to process the data, only SiRF's actions are involved in "processing" or "representing" the data.

*SiRF Technologies, Inc.*, 601 F.3d at 1331 (emphasis added).

Like in *SiRF Technologies, Inc.*, Google performs the manufacturing/configuration steps of claim 1 (Elements 1.1, 1.2, and 1.5), and Elements 1.3 and 1.4 of claim 1 are performed by devices designed, built and programmed by Google (Pixel 8 smartphone and Pixel Buds) that automatically perform the steps of Elements 1.3 and 1.4.

Further, the FAC also states as follows:

> To the extent that it is determined that the steps in Elements 1.3 and 1.4 are not performed by Google (which EETT asserts they are) but are rather performed by an end user, EETT asserts that Google still directly infringes at least Claims 1-4 and 8 of the '603 Patent. The Federal Circuit has held that there are circumstances in which others' acts may be attributed to an accused infringer to support direct infringement liability for divided infringement. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1381 (Fed. Cir. 2017).

FAC at ¶ 38.

> Specifically, the Federal Circuit held that if a third party, hoping to obtain access to certain benefits, can only do so if it performs certain steps identified by the accused infringer, and does so under the terms prescribed by the accused infringer, then this can result in direct infringer liability for divide infringement. *Id.* at 1380. Google distributes product literature and website materials instructing end users and others as to how to use its products in the customary and intended manner that satisfies Elements 1.3 and 1.4. *See* Exhibit B (extensively referencing these materials to demonstrate how they direct end users to use its products in an infringing manner). End users must perform these steps in order to obtain the benefits of wireless power transfer between devices.

FAC at ¶ 39.

Again, these plead facts provide sufficient notice and plausibility as to direct infringement.

B. The FAC Plausibly Alleges Direct Infringement based on Product Testing

The FAC states:

> Google also has and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claims 1-4 and 8, of the '603 Patent, by having its employees internally test and use these exemplary Products. *For example, on information and belief, Google must manufacture and internally test the power transfer functionality between its Pixel smartphones and its Pixel Buds prior to offering these products to the general public.*

FAC at ¶ 38 (emphasis added).

Contrary to Google's assertions, this is not merely a "conclusory allegation." Rather, it is a recitation of fact that is sufficient to provide notice and plausibility. Indeed, as discussed above, the plausibility standard is met when the complaint pleads "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Script Sec. Sols. L.L.C.*, 170 F. Supp. 3d at 936. Such is the case here.

IV. **THE FIRST AMENDED COMPLAINT SUFFICIENTLY AND PLAUSIBLY ALLEGES INDIRECT INFRINGEMENT**

The FAC states:

> On information and belief, Google has also continued to sell the exemplary Products and distribute product literature and website materials *inducing* end users and others to use its products in the customary and intended manner that infringes one or more claims, including at least Claims 1-4 and 8, of the '603 Patent. *See* Exhibit B (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

FAC at ¶ 43 (emphasis in original).

> At least since being served by this Complaint and corresponding claim chart, Google has actively, knowingly, and intentionally continued to *induce* infringement of the '603 Patent, literally or by the doctrine of equivalents, by selling exemplary Products to their customers for use in a

>manner that infringes one or more claims, including at least Claims 1-4 and 8, of the '603 Patent.

FAC at ¶ 44 (emphasis in original).

These plead facts provide sufficient notice and plausibility as to induced infringement, especially when combined with the evidence provided in Exhibit B of the FAC, which provides direct evidence of Google's product literature and website materials that are used to induce end users and others to use its products in the customary and intended manner that infringes one or more claims of the '603 Patent. Again, the plausibility standard is met when the complaint pleads "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of the alleged claims. *Script Sec. Sols. L.L.C.*, 170 F. Supp. 3d at 936. Such is the case here.

Google asserts that "the FAC fails to plead facts sufficient to show direct infringement by an entity, which is a required element of indirect infringement." Motion at 11. However, as shown in Section III above, the FAC has plead facts that are more than sufficient to provide notice and plausibility.

Google also asserts the FAC "does not provide any factual allegations to plausibly support any claim that Google specifically intended a third party to directly infringe and knew that the third party's acts constituted infringement." Motion at 12. This is simply false. The FAC specifically states that [t]he service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here." This is sufficient to provide notice and plausibility. Specifically, once Google has actual knowledge of the Complaint (based on the service of the Complaint), its continued distribution of product literature and its continued use of website materials, as evidenced in the claim chart of Exhibit B of the FAC, is plausible evidence of its intentional inducement of conduct that infringes one or more claims of the '603 Patent. Further, as discussed, the plausibility standard is met when the complaint pleads "enough facts to raise a reasonable expectation that discovery

BRIEF IN OPPOSITION TO MOTION TO DISMISS                                                              7

will reveal evidence" in support of the alleged claims. *Script Sec. Sols. L.L.C.*, 170 F. Supp. 3d at 936. Such is the case here.

## V. CONCLUSION

For at least the reasons set forth above, Plaintiff respectfully requests that this Court deny Google's Motion.

//

Dated:  September 20, 2024

Respectfully Submitted

/s/ *René A. Vazquez*
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
M. Scott Fuller
  Texas Bar No. 24036607
  rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

René A. Vazquez
  Virginia Bar No. 41988
  rvazquez@sinergialaw.com

**SINERGIA TECHNOLOGY LAW GROUP, PLLC**
18296 St. Georges Ct.
Leesburg, Virginia 20176
Telephone: (703) 989-2244

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document has been served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system on September 20, 2024.

*/s/ René A. Vazquez*
René A. Vazquez
